[Civ. No. 34603.    Second Dist., Div. Two.    July 23, 1969.]

THE PEOPLE, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; HARRY EDWARD REDD, JR., et al., Real Parties in Interest.

Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Carl E. Stewart and Felix Slater for Real Parties in Interest.

HERNDON, J.—The People petition for writ of mandate requiring respondent court to anul its order of April 4, 1969, as amended *nunc pro tunc* May 6, 1969, which purports to suppress certain statements of defendants, the real parties in interest herein, *under the authority of Penal Code section 1538.5.* The sole issue presented for our consideration is this:

"Does section 1538.5 provide a procedure for obtaining pre-trial rulings concerning the admissibility of evidence other than evidence obtained as a result of a search and seizure?" We have concluded that this question must be answered in the negative.

The defendants in the instant proceeding are charged in a 22-count information with the crimes of forgery and grand theft. So far as here relevant, it appears that defendants, the owner and manager respectively of an automobile service station, used a stolen credit card theretofore issued by Union Oil Company in preparing and submitting for credit several hundred forged credit card "charge slips" or "invoices." Within a relatively brief period several hundred invoices were submitted solely by defendants' station and no other, in a total amount exceeding $2,500, showing on their face some 140 different automobile license numbers, many of which were patently nonexistent. It therefore became immediately apparent that of necessity these forgeries and thefts were being committed by at least one of the four or five persons operating the particular station rather than by a customer thereof.

This information was communicated to the authorities who thereafter questioned the defendants separately and without prior admonition concerning their constitutional rights to remain silent or to obtain the services of an attorney. The officers requested defendants to examine the many forged invoices and indicate which of them they had prepared. Defendants did so and when they acknowledged preparation of invoices bearing nonexistent license plates they were arrested.

Defendants subsequently moved under the provisions of section 1538.5 to suppress the forged invoices and their statements made in reference thereto. The court's order, as corrected, provides: "Defendants' motions to suppress the evidence under Section 1538.5 P.C. is denied as to the Credit-Card Charge Slips, and the motion to exclude, *under Sec. 1538.5 P.C.*, is granted as to the statements of the defendants in relation to the Credit Cards prior to their being given a warning of their constitutional rights pursuant to the *Miranda* decision [*Miranda* v. *Arizona,* 384 U.S. 436 (16 L. Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974)]." (Italics added.)

Section 1538.5 expressly provides: "(a) A defendant may move for the return of property or to suppress as evidence any tangible or intangible thing *obtained as a result of a search or seizure* on the ground that: [Et cetera]." (Italics

added.) Various analyses of this section make it clear that it is indeed a limited statute relating solely to searches and seizures conducted by governmental agents. (Cf. *People* v. *Superior Court*, 70 Cal.2d 123, 128-130 [74 Cal.Rptr. 294, 449 P.2d 230]; Legislative Counsel's Opinion, 1967 S.J. 744.) The report of the Assembly Committee on Criminal Procedure entitled "Search and Seizure Procedure for Challenging Evidence Obtained by Search and Seizure" (22 Committee Reports, No. 12, pp. 9, 18-21 (1967)) concludes with the following recommendations:

"1. Search and seizure. The committee recommends that the procedure for challenging the legality of a search and seizure *be changed* (1) to provide for final determination of these questions prior to trial and (2) to allow the prosecution greater latitude in initiating appellate review of an adverse decision on a search and seizure issue. . . . 2. Feasibility of pretrial procedure for all questions of admissibility. The committee recommends *that a study be undertaken to determine the feasibility of establishing* a pretrial procedure for the resolution of all questions concerning the admission of evidence in criminal cases." (Italics added.)

Subsequently, in accordance with the committee's recommendations, section 1538.5 was enacted changing the procedure for challenging the legality of searches and seizures. Presumably further study is being given to other problems relating to the admissibility of evidence. Particularly pertinent here is the committee's observation under its second recommendation, quoted *supra*:

"One of the major defects in the present law is that it permits, if not encourages, search and seizure issues to be raised during the trial of a criminal case. As we have pointed out, the determination of these questions during trial breaks the continuity of the proceedings and results in lost jury time. The same thing may be said about the resolution of questions concerning the admissibility of other forms of evidence, e.g., confessions, admissions, and dying declarations, during trial.

"Judge Alarcon pointed out to the committee that the new Evidence Code requires questions concerning the admissibility of a confession or admission to be decided by the court outside the presence of the jury and that these proceedings can result in a significant interruption in the trial process. He suggested that the proposed procedure for resolving search and seizure

issues be expanded to cover these and other questions pertaining to admissibility of evidence.

"The committee believes that this suggestion has merit and that it should be studied to determine what impact its implementation would have on the administration of criminal justice. Such study should cover the following points:

"A. How much time is spent in the resolution of questions pertaining to admissibility of evidence?

"B. How would the suggested procedure affect the operation of district attorney's and public defenders' offices?

"C. What are the views of the bench and bar concerning such a procedure?

"D. If the prosecution is permitted to take an appeal from these proceedings would that result in a significant delay in the final determination of criminal cases?"

What procedures ultimately may be forthcoming as the result of these studies we need not speculate. It is sufficient for present purposes to hold, as we do, that Penal Code section 1538.5 as enacted is limited solely to questions involving searches and seizures and is inapplicable to the resolution of issues arising from challenged confessions or admissions, except those that constitute the fruit of a search and seizure. There being no contention, nor basis for a contention, that any search and seizure, legal or illegal, was involved in the instant action, the defendants' motion *under section 1538.5* should have been denied in its entirety.

It does not follow, however, that the court erred in exercising its discretion to hear a pretrial motion to suppress evidence of defendants' confessions or admissions against interest. Such a hearing is expressly approved in *Saidi-Tabatabai v. Superior Court,* 253 Cal.App.2d 257 [61 Cal.Rptr. 510]. However, as the court in *Saidi-Tabatabai* was at pains to point out, page 266, "any ruling on the admissibility of an admission or confession made at such a motion is not binding on the court if the People again offer the evidence at the trial *(People* v. *Beasley,* 250 Cal.App.2d 71, at pp. 76-77 [58 Cal.Rptr. 485]) . . ."

On the other hand, a court's ruling on the admissibility of evidence obtained as the result of a search and seizure is binding upon the People at trial unless they theretofore have obtained a reversal of the order on appellate review or "if they have additional evidence relating to the motion and not presented at the special hearing [and are able] to show good cause at the trial why such evidence was not presented at the special hearing and why the prior ruling at the special hear-

ing should not be binding.' . . .'' (Pen. Code, § 1538.5, subd. (j).) In speaking of an ordinary motion to suppress evidence, the court in *People* v. *Beasley, supra,* stated, page 77:

"An order suppressing evidence . . . is the equivalent of an order sustaining an objection to the same evidence, and is subject to the same procedural rules. These rules allow the trial court to reconsider, modify or set aside its order at any time prior to submission of the cause. [Citation.]

"In its later consideration of the motion to dismiss under Penal Code section 995 the trial court was obliged to make its determination whether defendants had been committed by the magistrate without reasonable or probable cause. It was not bound to follow any erroneous determination it had made in the order suppressing evidence.''

Therefore, we do not consider the merits of the trial court's ruling on the motion to suppress evidence of defendants' admissions since such ruling is subject to reconsideration in the court below at the time of trial. In addition, in the course of the present hearing, the attorney for the People explicitly advised the court:

"Well, your Honor, as the officer indicates, there was an hour and a half of questioning, and to get all of that testimony in is what is necessary to— We are talking about *Miranda* violations. We didn't introduce all of those statements because we are only dealing here with the question of illegal search and seizure. With the trial we will deal with the question of the *Miranda* violations, and at that time People intend to get in as completely as possible every word that was said by the defendants and every word that was said by the officers. There were two officers and another party that were present, and we will have all of that testimony, but I don't think that defense counsel or I can stand here and say exactly what happened at the time of that interrogation. Certainly, under these circumstances, for questions of search and seizure, we don't have any problem arising in the record as it stands.''

For the same reasons we express no opinion as to the consequences that might appropriately follow from a final determination that defendants' admissions were improperly obtained.

The writ of mandate will issue instructing the trial court to strike the words "under Sec. 1538.5 P.C.'' which we have italicized in our quotation of the court's order on page 50 of this opinion.

Roth, P. J., and Wright, J., concurred.